UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANNON WEBSTER,                     :
                                     :   NO. 1:12-cv-598
                                     :
          Plaintiff,                 :
                                     :   **OPINION & ORDER**
                                     :
     v.                              :
                                     :
                                     :
CITY OF FAIRFIELD,                   :
                                     :
          Defendant.                 :

          This matter is before the Court on Defendant's motion
for summary judgment (doc. 11), Plaintiff's response in
opposition thereto (doc. 20), and Defendant's reply in support
thereof (doc. 21). For the reasons that follow, we hereby GRANT
Defendant's motion.

**I. BACKGROUND**

          Beginning in 2003, Plaintiff Shannon Webster
("Webster") began part-time employment with Defendant City of
Fairfield as a firefighter/EMT-B (emergency medical technician
basic). She was encouraged to apply for that position by a
number of male firefighters. (Deposition of Shannon Lee Webster
(doc. 19) at 19, 24-26.) Prior to being hired, Webster had to
complete a physical ability test (Webster dep. at 27-31). When
she was hired, Webster, at 5'2", weighed 170 pounds (Webster

1

dep. at 14, 65).

Each firehouse has a workout facility in the building (Deposition of Chief Donald G. Bennett (doc. 18) at 35-36). Firefighters are required, and paid, to work-out one hour per shift (Bennett dep. at 76; Affidavit of Russell Kammer (doc. 11-2) ¶5; Deposition of Randall McCreadie (doc. 11-12) at 42-43, 56; Webster dep. at 64-65, 156, 202-03 & Exh. ii p.29). The department arranges coverage so that firefighters can fulfill this obligation, but even absent coverage, the workout requirement remains (McCreadie dep. at 42-43, 56). In order to track their compliance, firefighters record their workouts either into "pen and paper" logbook or a computer software program (Bennett dep. at 72-73; McCreadie dep. at 41-42; Webster dep. at 86, 202-03 & Exh. ii p.29-30). Webster testified that she did not work-out at the firehouse because of "time restraints," meaning she "was busy on runs" or "didn't want to work[-]out at 1:00 in the morning" (Webster dep. at 133-34, 158-59). Webster was not disciplined for this policy violation because she told her lieutenant, Randy McCreadie, that she instead worked-out at Planet Fitness, a private gym (McCreadie dep. at 56-57; Webster dep. at 38-39). Webster, however, did not comply with his request to provide written verification of her visits there (McCreadie dep. at 56-57).

2

Prior to 2011, firefighters took a Self-Contained Breathing Apparatus ("SCBA") test yearly. It monitored their endurance while performing such activities as navigating obstacles, climbing ladders and pulling weights while wearing an SCBA, akin to a scuba device. It was not, however, a pass/fail event. (Bennett dep. at 20-21.) In mid-2010, the training division, which included Captain Russ Kammer and Lieutenant McCreadie, consulted with Chief Bennett about revising the test such that it would evaluate a firefighter's ability to perform the essential functions associated with fire and emergency medical duties, including overall body strength and cardiovascular endurance (Bennett dep. at 44; Affidavit of Donald Bennett (doc. 11-1) ¶5). In June 2011, current firefighters took the new physical ability test for the first time, and it was added to the policy and procedure manual in July 2011 (Bennett dep. at 46-49; Bennett aff. ¶5; Kammer aff. ¶4). It consists of seven evolutions: tower climb with a hose pack; hose pull; tower descent; ventilation simulator; ladder raise and lower; charged hose drag; and victim rescue ("the dummy drag") (Webster dep. Exh. ee). A facilitator accompanies a firefighter when he or she takes the test to ensure that he or she properly completes each evolution (Bennett dep. at 55-56; Kammer aff. ¶4). Any firefighter who fails one or more

evolutions is required to re-test within six months; in the event of a second failure, the firefighter is referred to the department's physician for a physical evaluation (Webster dep. Exh. ee p.20). There is testimony that, prior to administering the new test in June 2011, the evolutions and the criteria for passing were reviewed with the firefighters (Bennett dep. at 45-46; Kammer aff. ¶4; McCreadie dep. at 18-19, 23). A number of the drills had been done in the past, so the firefighters were familiar with them (Kammer aff. ¶4). Webster claims that none of the firefighters were told in advance what to expect.

Webster took the physical ability test on June 24, 2011; her facilitator was Rob Lance. During the ladder evolution, she started to hoist the ladder, but stopped and stepped on the halyard to keep the ladder in place. This action, indicative of a lack of upper body strength, amounts to a failure of the evolution. Webster also struggled with the victim rescue evolution, dropping the dummy, but she failed the test because she did not properly complete the ladder raise (Kammer aff. ¶5; Affidavit of Robert Lance (doc. 11-3) ¶4; McCreadie dep. at 24-26; Webster dep. 89-92.) On July 15, 2011, Captain Jim Howell, Webster's supervisor, informed her that she failed the physical ability test (Deposition of James Howell (doc. 16) at 16-17; Webster dep. at 94, 96, 99-100, 102-03).

4

Webster testified that Howell told her they both knew she never would pass the test. He suggested that they could come up with a reason for her to resign, or she could take the test again in six months and, when she failed, he would follow the course that policy dictated (Webster dep. at 103, 118). At this time Webster weighed approximately 220 pounds; she agreed that this number made her 100 pounds overweight "per normal health standards" (Webster dep. at 115-16).

Webster's lieutenant, McCreadie, told Chief Bennett that Webster was upset after her meeting with Captain Howell (McCreadie dep. at 36). McCreadie set up a meeting for the following shift, so that he and the Chief could meet with Webster. Bennett asked Rich Hall—another lieutenant in the fire department, with whom Webster has a romantic relationship and has cohabited for the past nine years—to attend as well. (Bennett dep. at 77; Deposition of Richard Hall (doc. 14) at 5, 52; McCreadie dep. at 37; Webster dep. at 122-23.) Bennett told Webster that it was not the opinion of the department that she could not pass the physical ability test and that he, personally, would work out with her and show her what was needed to be done to develop her upper body strength (Bennett dep. at 77; Hall dep. at 72; McCreadie dep. at 37). McCreadie also offered to work out with her and "was not going to let [her]

5

quit" (Hall dep. at 72-73; McCreadie dep. at 37; Webster dep. at 120-21).  Webster was told, per policy, that she would need to re-take the test in December, six months hence (Bennett dep. at 61; Webster dep. at 124 & Exh. ee p.20).

In his capacity as Training Coordinator, Captain Kammer met with Webster and Lieutenant McCreadie regarding her failure of the June 2011 physical ability test; she was then advised what was needed to get in shape so that she could re-take the test and pass all evolutions.  Kammer told Webster that, since January 2011, her fitness workouts in relation to her hours worked were "out of balance" and that he had no record of her working-out every shift as required (Kammer aff. ¶5).  When Webster replied that she worked-out outside of the workplace, he told her that she needed to provide documentation of those workouts, but, as with Lieutenant McCreadie, she did not comply (Kammer aff. ¶5).  Webster acknowledged that she lacked upper body strength (Kammer aff. ¶5; McCreadie dep. at 53).  She re-took the physical ability test at the end of December 2011.  When she got to the ladder evolution, she "walked off" and "did not complete the test" (Webster dep. at 137-38).  Thereafter, per policy, Webster was advised to see the department's physician (Kammer aff. ¶6; Webster dep. at 41, 138-39 & Exh. ee p.20).  An excerpt of the correspondence from Chief

6

Bennett to Webster reads as follows:

> As outlined in the department's policies and procedures, Dr. [William B.] Lovett will conduct a complete physical evaluation and will determine you[r] fitness for duty. It has been our experience that Dr. Lovett and his staff will assist you in meeting your goal of <u>successfully</u> completing the physical ability test if given the opportunity to do so.
>
> As expressed in our meeting of January 5, 2012, it is the expectation of this officer [] that you will take the necessary steps to maintain employment with this department. <u>You have been a valued employee for the past eight years and we would certainly like to see your service to this community continue</u>.

(Webster dep. Exh. e (emphasis added).)

On January 17, 2012, Webster saw Dr. Lovett, at which time he performed a Fit-for-Duty exam. The evaluation included a Public Safety Health & Wellness Questionnaire on which she stated that she was 5'2" tall, weighing 217 pounds; smoked; had lung problems; shortness of breath that interfered with her job; heart arrhythmia; took medication for heart trouble; and had back pain. Dr. Lovett conducted a complete physical exam, a cardiac stress test including an endurance evaluation and a physical exam using the International Association of Fire Fighters-International Association of Fire Chiefs (IAFF-IAFC) Health & Wellness Initiative criteria. Webster took eleven minutes to complete the treadmill stress test, termed "greater than what is necessary to perform as a firefighter," and she could complete only ten sit-ups and three push-ups. Dr. Lovett

remarked on her "notable obese state" and her lack of "upper body strength." (Affidavit of Dr. William B. Lovett (doc. 11-4) at ¶12.) As part of the exam, an on-site physical trainer spent between 30-45 minutes with Webster to demonstrate what she needed to do to achieve "adequate upper body and core strength" Dr. Lovett also recommended to Webster that she continue her weight loss efforts. (Lovett aff. ¶13.) In a follow-up letter to Chief Bennett, Dr. Lovett offered these opinions:

> It appears that Ms. Webster's issue is that of physical strength and deconditioning. . . . I believe Ms. Webster should be given an opportunity to achieve adequate strength within the next 90-days through a continued resistance training and physical strength program which was shown to her at our facility. I have shared these requirements with Ms. Webster and I believe that they are reasonable in order to get her back to duty. <u>The ball is in her court from my perspective</u>. At this point I do believe she is at risk to herself and to the rest of the department until she is able to achieve adequate physical strength to perform her job.

(Lovett aff. ¶14 & Exh. A (emphasis added); Webster dep. Exh. e (emphasis added).) On Lovett's advice, Bennett placed Webster on administrative leave, advising her to contact Kammer when she was ready to re-test so she could return "to active duty as soon as possible" (Bennett aff. ¶8; Webster dep. Exh. w). Webster took the physical ability test for the third time in March 2012 and failed because she did not complete the dummy drag, stopping halfway through. She knew she failed the test. The department

scheduled her to re-take the test a fourth time, but she refused. (McCreadie dep. at 61; Webster dep. at 152-55.) Webster remains on administrative leave (Bennett dep. at 37, 88; Webster dep. at 84-86).

In her Complaint, Webster claims she was discriminated against on the basis of her sex in violation of 42 U.S.C. § 2000e-2(a)(1) (First Cause of Action) and Ohio Rev. Code § 4112.02(A) (Second Cause of Action). Defendant has moved for summary judgment, and the motion is ripe.

## II. SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The process of evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well-settled. First, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.

9

1993).  This burden may be satisfied, however, by the movant "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 331-32.  As "the requirement [of the Rule] is that there be no <u>genuine</u> issue of <u>material</u> fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (emphasis in original).  Ancillary factual disputes, those "that are irrelevant or unnecessary[,] will not be counted." <u>Id.</u>  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. Instead, the opposing party must present "significant probative evidence" demonstrating that "there is [more than] some

10

metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Companies, Inc., 8 F.3d 335, 339-40 (6th Cir. 1993) (applying Anderson, 477 U.S. at 249-50; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

At this summary judgment stage, it is not our role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962))). Adherence to this standard, however, does not permit us to assess the credibility of witnesses. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994) (citing Anderson, 477 U.S. at 255)).

### III. Discussion

A Title VII plaintiff relying on circumstantial evidence must first make out a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; 3) she was qualified for the position held; and 4)

either she was replaced by someone outside of the protected class or that similarly situated non-protected employees were treated more favorably. <u>Vincent v. Brewer Co.</u>, 514 F.3d 489, 494 (6th Cir. 2007). After the plaintiff has made out a <u>prima facie</u> case of discrimination, the employer must present a legitimate, nondiscriminatory reason for the adverse action. <u>Chen v. Dow Chem. Co.</u>, 580 F.3d 394, 400 (6th Cir. 2009). The burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretextual. <u>Id</u>. The burden of proof for a claim of sex discrimination under Ohio Rev. Code 4112.02 is the same as under Title VII. <u>Staunch v. Cont'l Airlines, Inc.</u>, 511 F.3d 625, 631 (6th Cir. 2008); <u>Shoemaker-Stephen v. Montgomery Cnty. Bd. of Comm'rs</u>, 262 F. Supp. 2d 866, 874 (S.D. Ohio 2003). Thus, Webster's federal and state claims are appropriately analyzed together.

Here, Defendant argues that Webster fails to meet two of the four <u>prima facie</u> prongs. Specifically, Defendant contends that Webster was not qualified as a firefighter and that she was not replaced by, or treated differently from, anyone outside the protected class. In addition, Defendant contends that, even if the record could be construed to show that Webster made her <u>prima facie</u> case, she has failed to show

12

that Defendant's decision to place her on administrative leave was actually pretext for discrimination on the basis of sex. Defendant is correct on all accounts.

## A. Webster was not qualified to be a firefighter.

Fatal to Webster's case is her failure to maintain her physical fitness. At the time she was hired, Webster weighed 170 pounds. At the time she was placed on administrative leave, Webster weighed approximately 220 pounds, rendering her, with a 5'2" frame, some 100 pounds overweight. Firefighters are required, and paid, to work out one hour per shift. Despite this obligation, Webster failed to work out on the job. She had the convenience of a workout facility in the firehouse to which she was assigned, yet she failed to make use of it on any type of consistent basis. Indeed, it would be generous to term her use of it as even sporadic (see, e.g., Webster dep. at 156-59). Webster claimed to workout at her private gym, Planet Fitness, but, despite being asked by both Captain Kammer and Lieutenant McCreadie, never provided proof of her visits.

Consistent with the national trend to increase the physical fitness of firefighters, a movement of which Webster was aware (Webster dep. at 82), Defendant established a new physical ability test. Unlike the test in effect prior to 2011, any firefighter who fails one or more of the seven parts is

13

required to re-test in six months. In the event of a second failure, the firefighter is referred to the department's physician for a physical evaluation. (<u>See</u> Bennett aff. ¶6 & Exh. B p.8.) Webster took the new test three times and failed three times. She refused to take it a fourth time. After Webster failed the first time, she was told by Chief Bennett that he believed that she could develop her upper body strength enough to pass the test. He even offered to work out with her. Her lieutenant told her that he was not going "to let [her] quit" and he, too, would work out with her. There is no testimony that she took either supervisor up on his offer. Webster acknowledged that she understood why a firefighter should have to pass such a test and agreed that "lives can depend upon a firefighter being physically unable or not able to assist in fire" (Webster dep. at 145). Nor did she think it "unreasonable" for Chief Bennett to require her to pass the new test (Webster dep. at 144-45).

After Webster failed the second time, again on the same evolution, she was referred to Dr. Lovett per standard operating procedure. In his letter to her explaining the referral, the Chief told Webster that it was his experience that Dr. Lovett and his staff "will assist you in meeting your goal of <u>successfully</u> completing the physical ability test" (Webster

14

dep. Exh. e (emphasis added)).[1]  Chief Bennett also remarked that Webster "ha[d] been a valued employee for the past eight years and we would certainly like to see your service to this community continue[]" (Webster dep. Exh. e).  Dr. Lovett performed a professionally tailored Fit-for-Duty exam.  Part of the exam included 30-45 minutes with a trainer to instruct Webster how she would need to exercise to accomplish her goal of developing the necessary upper body strength to pass the ladder raise and lower.  Dr. Lovett opined that she was not then currently fit for duty, but he believed she should be given 90 days "to achieve adequate strength . . . through a continued resistance training and physical strength program which was shown to her at our facility[]" (Lovett aff. ¶14 & Exh. A; Webster dep. Exh. e).  He remarked that "the ball [was] in her court[,]" signifying that her personal effort would control the outcome.

Under these facts, the Court finds that Webster was not qualified to be a City of Fairfield firefighter and thus she does not meet the third prong of her prima facie case.  We are mindful of the Sixth Circuit's instruction that we "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima

---

[1] The Court notes Dr. Lovett's considerable expertise in emergency medicine and first responder training (Lovett aff. ¶¶2-11).

facie case" because that "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575 (6th Cir. 2003) (citing Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000)). With regard to a plaintiff satisfying the qualification prong of the prima facie test, our parent circuit instructs that we must limit our focus to "a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." 317 F.3d at 575 (emphasis original). The Court believes this case falls precisely within this ambit. A new physical ability test became required of all firefighters beginning in 2011. Webster failed the ladder raise portion of it in June. On re-test in December, six months later, she failed the same evolution again, concluding she would hurt herself if she even attempted it.[2] At this point she was

---

[2] Below is the pertinent excerpt from Webster's deposition:

**Q. So you went to the fourth station out of how many stations?**

A. Six.

**Q. All right. And you walked off?**

A. I told them I'm not going to hurt myself to pull on this ladder, I'm done.

16

referred for a medical evaluation and was pronounced unfit for duty by the department's physician. These events seem eminently objective in nature; thus, the Court regards them to be properly considered at the <u>prima facie</u> stage.

### A. Webster was not treated less favorably than a similarly situated male.

Webster likewise does not meet the necessary fourth prong of her <u>prima facie</u> case. Initially the Court observes that Webster remains on administrative leave, and, as Chief Bennett testified, "her position remains open and available to her" if she passes the physical ability test (Bennett dep. at 88-89). Webster contends she was at a disadvantage when taking the test because she did not know what to expect. For purposes of summary judgment, the Court presumes this statement to be true; it is irrelevant, however, to any claim of disparate treatment. Webster does not assert that she, a female firefighter, was not apprised of what was expected of her. Instead, she maintains that <u>all</u> of the firefighters, male and female, were equally in the dark. Accordingly, it does not support her allegation that men were treated more favorably than

---

**Q. And you left?**

A. No, I stood there and they took my blood pressure, and asked me if I was okay and I said yes.

(Webster dep. at 138.)

17

she.   In  further  proof  of  her  claim  of  disparate  treatment,
Webster  testified  that  Bryan  Bowling  told  her  that  male
firefighters  Jonas  Roberts  and  Mike  Williams  failed  the  dummy
drag  during  the  June  2011  (Webster  dep.  at  106-08).   Rich  Hall's
testimony  is  slightly  different,  in  that  he  stated  that  Bowling
told  _him_  that  Roberts  failed  the  dummy  drag  and  Williams
struggled  with  it  and  he,  Hall,  was  the  one  who  told  Webster  in
his  role  as  her  boyfriend,  as  opposed  to  his  role  as  a
lieutenant  in  the  department  (Hall  dep.  at  48-51).   Bryan
Bowling  denies  making  any  such  statements  to  either  Webster  or
Hall  (Deposition  of  Bryan  Bowling  (doc.  17)  at  18,  31-32).
Webster  also  testified  that  male  firefighter  Ron  Lang  and  female
firefighter  Jennifer  Roseberry  struggled  through  the  test  and
possibly  failed,  but  she  equivocates  on  the  ultimate  question  of
pass/fail  (Webster  dep.  at  105-06,  112).   She  cannot  remember,
though,  who  told  her  this  information  (Webster  dep.  at  108-11).

       On  summary  judgment  it  is  not  this  Court's  role  to
resolve  conflicts  in  testimony.   It  is  our  role,  however,  to
evaluate  whether  evidence  would  be  admissible  at  trial.   Webster
seeks  to  use  the  alleged  statement  of  Bowling  for  the  truth  of
the  matter  asserted—namely,  that  male  firefighters  Roberts  and
Williams  actually  failed  the  dummy  drag  evolution  of  the
physical  ability  test  by  virtue  of  repositioning  the  dummy,  yet

they were not required to retake the entire test as she was six months later. Plainly, though, this alleged statement, if made to her, is hearsay and, if made to Hall and then told to her, hearsay within hearsay. Regardless, it is inadmissible. See Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (construing Fed. R. Civ. P. 56(e)). Contrary to Webster's argument, this alleged statement is not an admission of a party opponent (see doc. 20 at 10). Bryan Bowling is a firefighter-paramedic, not an officer of the department (see Bowling dep. at 8). His qualification as a fire instructor made him an appropriate designee to "facilitate"—which Bowling described as essentially observing—Roberts and other department members during the dummy drag evolution of the test when Lieutenant Wagner was called out on a run (see Bowling dep. at 15). But he denied any role in the ultimate pass/fail assessment (see Bowling dep. at 16-18, 30-31), and Webster offers no contrary testimony. Thus, any alleged statement Bowling made would have been outside the scope of his employment and therefore outside the hearsay exception described in Fed. R. Evid. 801(d)(2)(D).[3] See Arnold v. City of Columbus, 515 Fed. App'x 524, 534 n.7 (6th

---

[3] Webster's testimony concerning Lang and Roseberry is obviously inadmissible as she cannot remember who made the statement to her. Moreover, even if not admissible, any statement that Roseberry, a female, was passed despite failing one or more evolutions would only serve to undercut Webster's sex discrimination claim.

Cir. 2013).

Even if it were admissible, it would not serve to establish Roberts and Williams as comparators. Webster did not fail the dummy drag. Like Roberts and Williams, she struggled during that evolution, but eventually crossed the line and therefore passed. Instead, Webster failed the ladder raise and lower. There is no testimony that Roberts even struggled with this evolution, much less failed.[4] Williams apparently struggled with it because—in complete contrast to Webster—of his slim build and recent weight loss. Chief Bennett, as well as his captain and lieutenant, counseled Williams on the need to take corrective steps, which he did. (Affidavit of Thomas

---

[4] Indeed, Bowling's testimony as Roberts' facilitator is just the opposite:

**Q. Did you observe Jonas Roberts take the test?**

A. Yes, I did.

**Q. And did Mr. Roberts – was anyone else observing Mr. Roberts with you?**

A. No.

**Q. Did Mr. Roberts have any trouble with the ladder?**

A. No.

**Q. Did Mr. Roberts finish the test?**

A. Yes.

(Bowling dep. at 17.)

Wagner (doc. 11-6) ¶7; <u>see</u> Webster dep. at 116.)  Webster argues

that the tests were judged inconsistently, but the only area of

purported conflict involved the dummy drag (<u>see</u> Hall dep. at 35;

Webster dep. at 130), an evolution that she completed

successfully.[5]  The only admissible evidence regarding the

results of Roberts and Williams' June 2011 physical ability

tests, then, indicates that they passed (<u>see</u> Kammer aff. ¶8;

Wagner aff. ¶¶4, 7.)  Accordingly, Webster cannot establish the

fourth prong of the <u>prima facie</u> case as she has adduced no

evidence that similarly situated males were treated more

favorably than she.[6]

---

[5] In May 2012, Roberts did fail the test when he could not
complete the dummy drag.  He testified that he has bad knees
from his work as a carpet installer and "decided [he] could no
longer do this job [as a firefighter]."  He asked Chief Bennett
to transfer into a fire inspector position.  Fire inspectors are
not required to take the physical ability test; it applies only
to individuals with fire <u>suppression</u> responsibilities.  As no
such positions were then available, the Chief told him that he
would have to re-take the test in six months.  Roberts
transferred into an open fire inspector position on November 1,
2012; then exempt from the test, he did not re-take it.
(Deposition of Jonas Roberts (doc. 15) at 8-9, 19-20; <u>see</u>
Webster dep. Exh. ii p.30).)

[6] Webster also claims that she learned "[f]rom the rumor mill,
from people talking" that an entire unit essentially was excused
from the ladder evolution because it was "broke" on the day
these firefighters were scheduled to take the physical ability
test (Webster dep. at 126).  Hall testified that he told Webster
of this purported event, although admits he did not personally
observe it and thinks Bowling may have told him but "didn't
remember exactly who was talking[]" (Hall dep. at 48-49).  For
the reasons outlined above, the testimony of both Webster and
Hall, asserted for the truth of the matter therein, is

In sum, Webster has not presented, as she is required to do, "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" and has failed to satisfy two of the four elements of the prima facie case for sex discrimination.  See Moore, supra, 8 F.3d at 339-340.  The Court's role in evaluating a motion for summary judgment on a Title VII claim is to "'determine if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the prima facie requirements.'" Cline, supra, 206 F.3d at 661.  No reasonable jury could, on these facts, find the prima facie requirements met.

**B. Webster cannot rebut the legitimate, nondiscriminatory reason, her multiple failures of the physical ability test, that led to her eventual placement on administrative leave.**

Even if the Court were to find that Webster had satisfied the prima facie requirements, she nonetheless cannot overcome summary judgment because her multiple failures of the physical ability test was a legitimate, nondiscriminatory reason leading to her referral for a Fit-for-Duty medical examination that ultimately resulted in a recommendation, accepted by Chief Bennett, that she be placed on administrative leave, her current

---

inadmissible hearsay.  Moreover, even if admissible it is nonetheless irrelevant, as Webster makes no claim that the ladder was not working properly the day she took the test in June 2011 or that equipment malfunction was the reason she failed that particular evolution.

employment status.  Webster herself does not dispute the need for firefighters to be fit in order to carry out their very important public safety responsibilities; nor do we.

A plaintiff can show pretext in three ways.  See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994).  First, she can show that the proffered reasons had no basis in fact.  This first type of showing consists of evidence that the proffered basis for the adverse treatment never happened, i.e., that it was false.  Second, a plaintiff can show that the reasons given by the employer were insufficient to motivate discharge.  This second showing ordinarily consists of evidence that other similarly-situated individuals were more favorably treated.  Third, she can show that the defendant's proffered reason did not actually motivate the adverse action.  In order to make this third type of showing, the plaintiff must introduce additional evidence of discrimination.  Id. at 1083-84.

The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of the Manzer test, "lest one lose the forest for the trees."  Chen, supra, 580 F.3d at 400 n.4.  Pretext, the Court observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?  This requires a court to ask whether the

plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." Id.

Webster does not cite to Manzer—or any subsequent Sixth Circuit opinion in which it has been applied—in her memorandum contra, but maintains "[t]he fact that the City of Fairfield knew [the physical ability test] was administered unequally means the alleged 'legitimate reason' has no basis in fact[]" (doc. 20 at 9). Continuing, her counsel posits, "to say that Webster failed her physical exam and was not physically capable of being a firefighter and according to policy was put on administrative leave is disingenuous and irrelevant[]" (doc. 20 at 9-10). The Court disagrees. Webster has adduced no evidence that the ladder raise and lower evolution was administered unequally or that similarly situated male firefighters stepped on the halyard to steady the ladder, as she did, and nevertheless passed. Moreover, nothing in the record supports counsel's rather bold claims that Webster was, in fact, fit for the job, or, apparently in the alternative, that the physical fitness of any firefighter, Webster included, is an irrelevant consideration. The admissible evidence before this Court does not cast doubt on the assessment that Webster failed the physical ability test in June 2011 and again in December 2011, after which she was properly referred for a physical exam,

24

pronounced unfit for duty and thereafter placed on administrative leave. Webster concedes that she failed to work-out one hour per shift as required, lacked appropriate upper body strength and is 100 pounds overweight. A personal trainer on the staff of the department's physician gave her tailored instructions on how to improve her upper body strength to enable her to pass the physical ability test. Both her chief and her lieutenant offered to help her get in shape, yet she took advantage of neither invitation. Webster's job remains available to her once she passes all evolutions of the test. In short, Webster has failed to present any evidence from which a reasonable jury could conclude that Defendant's proffered reason for placing her on administrative leave was a pretext for impermissible sex discrimination.

## IV. Conclusion

Because Plaintiff Shannon Webster has failed to meet her prima facie case with regard to her allegations of sex discrimination and, even if she had, because she has failed to show that the decision to place her on administrative leave was a pretext, Defendant City of Fairfield is entitled to summary judgment on her claims under 42 U.S.C. § 2000e-(2)(a)(1) (First Cause of Action) and Ohio Rev. Code 4112.02(A) (Second Cause of Action). The Court thus GRANTS Defendant's Motion for Summary

Judgment (doc. 11) and this matter is now closed on the docket.

            SO ORDERED.

Dated:  April 29, 2014      s/S. Arthur Spiegel_____
                            S. Arthur Spiegel
                            United States Senior District Judge